FREEMAN C. DODGE v. FREDERICK G. KIENE.

[FILED DECEMBER 17, 1889.]

1. **Contract:** PAROL EVIDENCE. Where a contract has been reduced to writing without any uncertainty as to its terms and meaning, the presumption of law is that the entire contract is contained in the writing, and parol testimony of declarations made by the parties at the time it was made is not admissible in evidence.

2. ———: EVIDENCE. The introduction of illegal evidence by one party upon a trial, and its admission by the court, is not sufficient justification for the admission of evidence otherwise inadmissible when offered by the other party.

3. ———: ———. The evidence of the readiness and ability of D. to deliver the hogs, in pursuance of the terms of the contract, examined, and *held*, that the verdict is sustained by the evidence.

ERROR to the district court for Douglas county. Tried below before GROFF, J.

*Albert Swartzlander*, and *Thummel & Platt*, for plaintiff in error, cited: Code, secs. 99, 565; *Shelton v. French*, 33 Conn., 489; *Wills v. Willets*, 35 Ill., 88; *Armstrong v. Spears*, 18 Ohio St., 373.

*Hall, McCulloch & English*, for defendant in error:

The rule excluding parol evidence applies only to the language of the contract; surrounding circumstances are

Dodge v. Kiene.

proper to be considered in order to understand the intention of the parties. (1 Greenl., Ev., secs. 275–7; *Veryan v. Mc-Gregor,* 23 Cal., 339; *Facey v. Otis,* 11 Mich., 216.) The evidence complained of is simply rebuttal of that introduced by plaintiff, and cannot be assigned as error by him. (*Dyer v. Fredericks,* 63 Me., 173; *Ransom v. Bartley,* 70 Mich., 379; 38 N. W. Rep., 287; *Campbell v. Crone,* 10 Neb., 571; *C., K. & N. R. Co. v. Wiebe,* 25 Id., 543; *Howell v. Graff,* Id., 130.

COBB, J.

This cause is brought to this court on error from the district court of Douglas county.

The plaintiff brought this action in the court below for the failure of defendant to accept and pay for 600 hogs, according to the terms of the following agreement and guaranty:

"SOUTH OMAHA, NEB., April 5th, 1887.

" I hereby agree to deliver to F. G. Kiene, at Wood River, Nebraska, between the 15th of May and the 15th of June, 1887, at buyer's option, six hundred hogs, to weigh from 275 lbs. upwards and to average 300 lbs., at $5.25 per hundred. Said F. G. Kiene to call for delivery of all or any part of said six hundred hogs, at any time between the dates named.                          F. G. KIENE.

"F. C. DODGE.

" In case said F. G. Kiene fails to take said hogs as per said agreement, or in any manner fails to keep said agreement, I hereby agree to pay to said F. C. Dodge the sum of six hundred dollars.

"GEORGE ADAMS & BURKE."

2. The plaintiff duly performed all the conditions of said contract on his part, and was on the 15th day of June, 1887, and for a calendar month prior thereto, ready and willing to deliver the hogs therein mentioned, and on said

15th day of June, 1887, duly tendered the same to the defendant.

3. That the defendant refused to accept said hogs and to pay for them pursuant to his agreement, to the damage of the plaintiff in the sum of $2,070, for which he prays judgment, with interest from date.

The defendant on leave answered: That he denied each and every allegation contained therein except as in this answer specifically admitted; denied that he is indebted to plaintiff in any sum whatever upon the pretended contract sued on herein, and further says that at no time between the dates in said pretended contract mentioned, did said plaintiff have a sufficient number of hogs of the kind and weight mentioned to furnish to defendant; wherefore defendant prays to be dismissed with his costs.

There was a trial to a jury with a verdict for the defendants and judgment for defendant's costs, with exceptions on the record, on which the plaintiff assigns the following errors:

1 and 2. In overruling the motion for a new trial, and that the verdict is not sustained by the law or evidence.

3. In refusing to give plaintiff's instructions to the jury.

4. In giving instructions 3 and 4 on the court's own motion.

5. In admitting testimony objected to.

6. In refusing to admit testimony offered.

7. Errors of law excepted to on the trial, and

8. In rendering judgment for defendant on his original answer.

Considering the first and second assignments, they are not believed to constitute reversible errors in this instance, and are therefore overruled.

As to the third and fourth, the plaintiff cannot under the decisions of this court avail himself of the alleged errors, for the reason that no exceptions were saved on the trial, in the first instance, to the refusal to give the instructions

offered, nor were there exceptions taken, in the second instance, to the instructions of the court given on its own motion, and are therefore overruled.

As to the fifth error, the first witness on the trial called by defendant was Frank Chittenden, who testified that he was a salesman at the stockyards at South Omaha, in 1887, employed by George Adams and Burke; that he was present when the parties to this suit were in the office of Adams and Burke at the stockyards in that year.   Being shown a certain paper on which this action is brought, he was asked the question, What paper is that?   He answered, That is the original of the contract that he wrote ; that he made a couple of copies of it afterwards ; that he wrote Exhibit A (the guaranty to the contract), referring to it at the request of the defendant.

Q. Did you hear the arrangement, or talk, between Mr. Kiene and Mr. Dodge which led up to the transaction ?

A. I heard some talk down in the yard, but did not hear all of it.

Q. What was said by these parties in your presence, and in that of each other, as to the agreement, which led up to your writing it ?

A. He was to take 600 hogs, and if he failed to take them, he was to forfeit $500.

Q. Why, then, was the latter part of that attached, signed " George Adams and Burke;" what did Dodge want Kiene to do?

A. He wanted him to put up $500, and Kiene, in order not to lay out of the money, had Adams sign this contract, which answered the same purpose.

Q. Did Dodge agree, then, to take Adams and Burke, instead of Kiene, for that $500 ?   (Objected to, as incompetent.)

Q. I mean for $600 ?

By the court : Remodel your question.

Q. (Changed.)   Did Dodge agree, then, to take Adams

and Burke instead of Kiene for that $600? (Objected to, that the question calls for evidence varying the terms of the written contract between the two parties, and is incompetent.)

By the court: Your question is leading, but I am going to give you just the same deal that I gave the other side on yesterday in this business, if I know how to do it. Try again.

Q. What was said between the parties about the attaching of this latter part of the paper signed by "George Adams and Burke," if anything? (Objected to, as incompetent; overruled.)

A. Dodge wanted Kiene to put up $500, and they talked it over, and Kiene did not want to lay out of that money and asked him if he would not take Adams for it, to which he said that he would, and that Adams would be good for the money.

There were other questions of the same general character asked and answered over objections, but the foregoing is sufficient to show the general character of the exceptions.

Attention is here called to the instrument sued on, and to the fact that the suit is between Dodge and Kiene alone, and that while the guaranty clause of the contract is set out in the plaintiff's petition, and, together with the instrument, was offered and received in evidence, yet it constitutes no part of the contract between the parties to this action. It would seem, with due deference to the court and counsel who tried the cause below, that any formal inquiry, by evidence or argument, as to this separate agreement of Adams and Burke, was superfluous and premature, in an action in which neither of the guarantors was a party.

The professed object of the defendant in the introduction of the evidence to which exceptions were taken, and of the court in receiving it, was to explain this guaranty clause of the contract, as though a peculiar refraction of borrowed light, from that source, would illuminate the main instru-

ment. If the contract required explanation, and if parol evidence were competent to explain it, then, doubtless, such evidence should have been directed to the terms of the contract itself. The counsel for the defendant, no doubt, gives proper expression to the law in the following paragraph of his brief:

.  "It is a well settled rule, that when a contract has been reduced to writing without any uncertainty as to the object and extent of the obligation, the presumption is that the entire contract was reduced to writing, and oral testimony as to declarations at the time it was made are inadmissible."

I do not doubt that the guaranty clause, as we have called it, might be read in connection with the main instrument for an explanation of it, if its terms were doubtful, or its meaning obscure, but I do not understand that either party at the trial, or in the argument of the case, claimed them to be so.

The learned court seemed to be in doubt of the admissibility of the evidence objected to on its own merits, and suggested a justification of its admission in the fact that on the previous day he had extended a similar indulgence to the plaintiff. This consideration might weigh with the party himself, to induce him to withhold exceptions, but it cannot be said to change the rules of evidence, in order to balance the errors of that occasion. The admission of this evidence must be held to be error, but for reasons to be given it will not be held to be prejudicial to the plaintiff in error.

But are the terms of the contract in any sense obscure or ambiguous, or is its meaning unintelligible or doubtful? I do not so consider them. Dodge agreed to deliver to Kiene, at Wood River, between the 15th of May and the 15th of June, 1887, at buyer's option, 600 hogs, to weigh from 275 pounds upwards, and to average 300 pounds, at $5.25 per hundred. Kiene agreed to call for delivery of all or any part of the 600 hogs at any time between the dates named.

The word "option," in the sense used in the contract, is recognized as a privilege to a party to a time contract of demanding its fulfillment on any day within the specified limits. Here the privilege was that of Kiene, to call for and demand the delivery of the hogs, at the place designated, at any time between the 15th of May and the 15th of June. By the exercise of this privilege, had he chosen it, he could have limited the right of Dodge to deliver the hogs and demand the price, under the contract, to that day. Not having chosen to exercise this right, the rights of Dodge were confined to the last day of the contract. It is argued by the defendant's counsel that the contract lacks the element of mutuality — that it fails to provide in express words, upon the delivery of the hogs, that Kiene was to pay for them; yet, taking the whole provisions of the contract, it would seem that the words following the agreement of Dodge to deliver the hogs "at $5.25 per hundred," and the agreement of Kiene to "call for delivery," amounts, in substance and beyond implication, to an agreement by Kiene to pay for the hogs, on delivery, at the price specified.

Before, however, Dodge could lawfully demand of Kiene to receive the hogs on the last day of the contract, he must have the hogs, on hand, at the place of delivery, and be in condition to fully discharge his part of the contract, and to do whatever was necessary and reasonable, to notify Kiene of his ability and readiness to deliver them.

It grew out of the option conceded to Kiene, under the terms of the contract, to call for the delivery on any day within the time limited; that the right of Dodge to offer to deliver, without a call by Kiene, was confined to the last day of the time limited. The parties are shown by the bill of exceptions to have been, at the time, extensive dealers in hogs. It is apparent from the testimony that, when they entered into the contract, it was the intention of both parties to carry it out in good faith, so that if, on the last day of the time limited, Dodge had the hogs at the place of delivery,

and notified Kiene, or did that which might be deemed reasonable, to the extent of his ability, to notify him of his readiness to comply with the contract, he ought to recover; and the measure of his recovery would be the difference between the market value of the hogs at that time and place, and the price specified in the contract, if there was such difference; and it appears from the evidence that there was.

The main question, then, for the jury, and which, as no exceptions were taken to the instructions given or refused, this court will presume was fully and fairly submitted to them, was, whether on the 14th day of June the plaintiff was ready and prepared to deliver the hogs to the defendant and duly notified him of that purpose.

Upon this main point there is conflicting evidence: the plaintiff himself, and his brother, G. F. Dodge, testified that he had the hogs on hand, and was prepared to deliver them, while Ford and Williams, whose depositions were read on the part of defendant, and who appear to have been familiar with the circumstances, testified that at no time during the period limited, nor on the last day, had the plaintiff the number and quality of hogs on hand at the place of delivery. Whatever may, in point of fact, have led the jury to their conclusion, we, as a court of review, must assume that they had reason to believe the evidence of the witnesses for the defendant, and that they disbelieved that of the plaintiff and his witness. In that view, we cannot say that the verdict is unsupported by the evidence in the case.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.