ALBERT WEBB *vs.* THE BALTIMORE AND EASTERN
SHORE RAILROAD COMPANY.

*Subscription to Capital stock—Tender of Certificates—
Validity of Subscription—Sec. 163 of Art. 23 of the Code
—Absolute subscription—Statute of Frauds.*

In the subscription book of a railroad company, W. signed his name to an agreement to take twenty shares of the stock of the company when the road was completed to Vienna.   The road was completed.   HELD:

Webb *vs.* Baltimore and Eastern Shore Railroad Co.

1st. That it was not necessary that the railroad company should have tendered the certificates of stock before bringing suit to recover the money due on the subscription.

2nd. That the subscription was binding on the subscriber notwithstanding he failed to pay, at the time of making the subscription, an instalment of five dollars in cash on each share of stock subscribed, as required by section 163 of Article 23 of the Code.

When the railroad was completed to Vienna, the subscription for the twenty shares of stock became absolute, and the price therefor then became payable on demand of the directors of the company.

The contract of subscription, in such case, is not within the Statute of Frauds, (29 Charles II, ch. 3, sec. 17,) not being a contract for the sale of "goods, wares, and merchandise,"—shares of stock being only *choses in action.*

APPEAL from the Circuit Court for Dorchester County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, MCSHERRY, and BRISCOE, J.

*John Prentiss Poe, Attorney-General,* (with whom was *Sewell T. Milbourne,* on the brief,) for the appellant.

*Robert P. Graham,* (with whom was *Harry L. D. Stanford,* on the brief,) for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought to recover of the defendant for certain stock subscribed in the plaintiff company. The declaration contains several of the common *indebitatus* counts, but the fifth count is special, and it alleges that the defendant subscribed for and agreed to take twenty shares of the capital stock of the plaintiff company, and to pay $1000 therefor, on the completion of

the railroad of the company to the town of Vienna, Maryland; and that, although the said railroad has long since been completed to the said town of Vienna, and that the said subscription is due and demandable, the defendant has not paid the same, or any part thereof. By the pleas, the defendant denied the legal existence of the contract alleged, or that he was in any manner bound thereby.

The questions presented on this appeal are simply as to the admissibility of evidence, and are presented by two bills of exception taken by the defendant.

At the trial it was admitted that the plaintiff was a corporation, duly organized and existing under the laws of the State; and that the plaintiff had constructed its railroad from Easton Bay, in Talbot County, to the town of Vienna, in Dorchester County, before the first of January, 1891; and that, in the construction of its road, the plaintiff had expended large sums of money, and created a large indebtedness, still outstanding at the time of this suit brought, to wit, the 12th day of August, 1891. It was also admitted, that, before this suit was brought, the defendant received from the secretary of the plaintiff, a letter calling on him to pay the money alleged to be due on the stock, and further, that before the bringing of this suit, neither the plaintiff, nor any one in its behalf, ever offered or tendered the certificates for the stock subscribed for by the defendant. The plaintiff then offered in evidence a subscription book, purporting to be a subscription book for the stock of the plaintiff, and proved by an agent of the company, to whom the book had been entrusted to procure subscriptions, that it was the subscription book of the plaintiff, and that the entry in that book, to which the name of the defendant was subscribed, was made and signed by the defendant. In that book there is this heading: "We, the undersigned, agree to subscribe to and pay for the

number of shares of the capital stock of the Baltimore and Eastern Shore Railroad Company, set opposite our names, provided the said road shall be built on the Vienna route; said shares of stock to be of the par value of .fifty dollars, and the same to be paid for in instalments of twenty per cent. as any ten miles of road are completed." This heading had appended to it about sixty signatures; and then follows this entry:

20 { "I hereby agree to take twenty shares of the Baltimore & Eastern Shore Railroad stock when completed to Vienna.
$1,000.00.                    ALBERT WEBB."

To the offer of this subscription book, with the entry therein signed by the defendant, the latter objected, and in support of his objection has assigned several grounds: First, that there was no evidence of a tender of certificates of stock to the defendant, and that this suit could not be maintained without such tender; and that the subscription was invalid because the statutory instalment was not paid. Secondly, that there was no contract of a present subscription for stock, but, at most, nothing more than a mere promise to subscribe when the road was completed to Vienna: Thirdly, that if the entry signed by the defendant be treated as a present subscription to stock, the contract is within the provisions of the Statute of Frauds, 29 Car. II, c. 3, sec. 17, and that it is fatally defective in omitting to name the vendor of the stock, and that there is no sufficient consideration for the defendant's undertaking shown on the face of the subscription paper. There is also a general objection taken to the admissibility of the subscription book in evidence. The objection to the admissibility of the evidence was overruled.

In the opinion of this Court, none of the grounds assigned in support of the objection taken, can be sustained.

Webb *vs.* Baltimore and Eastern Shore Railroad Co.

1. There is clearly no valid ground for the objection that the certificates for the stock should have been tendered to the defendant, as a condition precedent to the right to maintain this action for the money due on the subscription. This would seem to be well settled.. 1 *Moraw. on Corp.*, sec. 61, and cases there cited. *Scarlett vs. Academy of Music,* 43 *Md.,* 203. Nor is the objection well taken that the subscription is not binding upon the defendant, because it is not shown that an instalment of $5 in cash, on each share of stock subscribed, had been paid at the time of making the subscription, under section 163 of Art. 23 of the Code. The omission of such payment does not invalidate the subscription. That construction of this provision of the statute has been settled by the decision of this Court, in the case of *Oler vs. Balto. & Randallstown Railroad Co.,* 41 *Md.,* 593. And with respect to the necessity for showing that the amount of the subscription had been called for by the directors of the company, before suit brought, it was admitted that the defendant had received a letter, before suit brought, purporting to be from the secretary of the plaintiff, calling upon him to pay the money due on the stock, as being then due, but that payment was refused. Whether that call or demand was made by the authority of the directors of the company, was a question of fact for the jury, upon all the evidence in the case.

2. The subscription in the form in which it was made was inchoate and conditional. It was such, however, as the company had a right to accept. *Taggart vs. The West. Maryland Railroad Co.,* 24 *Md.,* 595; *Phil. & West Chester Railroad Co. vs. Hickman,* 28 *Penn. St.,* 318. It was simply a continual offer by the defendant to become a stockholder after the condition specified had been performed by the company. The performance of the condition precedent on the part of the company was neces-

sary to a valid acceptance of the offer thus made by the subscriber; and before this acceptance, by the performance of the condition precedent, the defendant did not, by virtue of such subscription, become a member of the company. His subscription was a mere offer, and unless withdrawn before the condition performed by the company, it became final and absolute immediately upon the performance of the condition; or as said by this Court in *Taggart vs. West. Maryland Railroad Co., supra,* such conditional subscription, upon the performance of the condition, thus became ultimately an unconditional and absolute subscription. And that being the effect and operation of the subscription made by the defendant, it is quite clear that no other or further act of subscription was necessary, or contemplated by the parties, in order to convert the original conditional subscription into an unconditional and absolute subscription. The defendant appears to have declined the conditional terms embraced in the heading of the preceding subscriptions, which required the amount of the subscriptions to be paid in instalments of 20 per cent. as any ten miles of the road should be completed; and he preferred to make his subscription separate, and to make it depend upon the completion of the road to Vienna; and when the road was so made, which is admitted to have been done before this action was brought, the subscription of the defendant for the twenty shares of stock became absolute, and the price therefor thence became payable on demand of the directors of the company. This is the clear import of the subscription of the defendant. No particular form of subscription is made essential, and the present subscription is not of a formal character; yet there is enough in the paper, when read in connection with what precedes it in the same book, to show what was really intended by the parties to the contract.

98        MARYLAND REPORTS.

Webb vs. Baltimore and Eastern Shore Railroad Co.

3. The contention that this contract of subscription is within the Statute of Frauds, 29 Chas. II, ch. 3, sec, 17, is not maintainable, either upon reason or authority. A subscription for shares of stock, in an ordinary corporation, is not a contract for the sale of "goods, wares and merchandise;" words which comprehend only corporeal movable property. Shares of stock are but *choses in action*, and are not within the Statute; and this is the established construction of the Statute by the English Courts, as shown by the collection of cases by Mr. *Benjamin* in his admirable work *on Sales*, pages 90, 91; and the same construction has been adopted by decisions of high authority in this country; (*Brown on Statute of Frauds, sec.* 298; *Ang. and Ames on Corp., sec.* 563; *Clark vs. Burnham,* 2 *Sto. C. C. Rep.,* 15,) though there are some decisions, especially of an earlier date, entitled to great respect, to the contrary. In the absence of a binding authority, such as an express decision of this Court, we are not disposed to adopt and follow the decisions of the American Courts, holding that the Statute does apply in such cases, being as they are in conflict with the English Courts upon this subject. We think the English decisions furnish the better and more reasonable construction of the Statute.

In the case of *Colvin vs. Williams*, 3 *H. & J.*, 38, the *only* case in this State supposed to give any support to the contention of the defendant, the question presented was quite different from that presented in this case. In that case there was a sale of bank stock by a broker, and the broker became the agent of both seller and buyer, and in whose name as vendor a memorandum of sale was made out and delivered to the defendant, who filled up the blank in the memorandum with the number of shares he desired, and accepted the same as purchaser of the number of shares sold. Upon this memorandum the Court below held the plaintiff to be entitled to re-

Webb *vs.* Baltimore and Eastern Shore Railroad Co.

cover; and upon appeal, this Court held the Court below right in its ruling, and affirmed the judgment.    There was no opinion delivered; but it is stated at the con-clusion of the case, whether by the authority of the Court, or by the reporters of the case without such authority, does not appear, that it was said by the Court "that the sale of bank stock is within the Statute of Frauds; and that the broker was the common agent of both the appellee and appellant." If such was the case, as we must take it to be, it is very clear that the declaration made at the conclusion of the case, "that the sale of bank stock was within the Statute of Frauds," was wholly unnecessary to the decision of the case, and was purely a *dictum*, if in fact it be assumed to have emanated from the Court at all.    The Statute did not avail as a defence to the defendant, if it was in fact relied on as a defence, which does not appear to have been the case. There have been many cases since that decision in which such defence could have been taken, if the Statute was applicable in such cases as this, but which passed without question as to the application of the Statute.

Upon both exceptions, therefore, we are of opinion that the Court below was correct in its rulings, and that the judgment appealed from should be affirmed.

*Judgment affirmed.*

(Decided 14th March, 1893.)