ISAAC SYLVESTER V. CARPENTER PAPER COMPANY ET AL.

FILED JUNE 23, 1898.   No. 8146.

| 55 | 621 |
|----|-----|
| 56 | 713 |
| 55 | 621 |
| 61 | 501 |

Contract: EVIDENCE. Where negotiations take place between parties which result in their reaching an agreement in reference to the subject-matter of the negotiations, and the parties subsequently reduce their agreement to writing, sign and deliver the same, then, in the absence of fraud or mistake or an ambiguity in the writing, it constitutes the best and the only competent evidence of the contract originally made.

ERROR from the district court of Douglas county. Tried below before BLAIR, J.. *Affirmed.*

*Brome, Burnett & Jones,* for plaintiff in error.

*Byron G. Burbank, L. D. Holmes,* and *E. C. Page, contra.*

RAGAN, C.

In January, 1892, Isaac Sylvester, of Omaha, Nebraska, owned a printing outfit on which Marder, Luse & Co., of Chicago, held a chattel mortgage to secure a debt owing to them by Sylvester. At said time there existed in Omaha a corporation known as the Carpenter Paper Company. January 16, in said year, Sylvester, the Carpenter Paper Company, and Marder, Luse & Co. signed an agreement in writing, in words and figures as follows: "This memorandum of mutual agreement, made between Isaac Sylvester, of Omaha, Douglas county, Nebraska, and Marder, Luse & Co., an incorporation, of Chicago, Cook county, Illinois, parties of the first part, and the Carpenter Paper Company, an incorporation of Omaha, Douglas county, Nebraska, party of the second part, witnesseth: The said parties of the first part, for and in consideration of one dollar, in hand paid, and the covenants and agreements of the second party, hereafter mentioned, hereby agree to lease to the said party of the second part all of the printing machinery, and material, engine, shafting, belting, office furniture, and fixtures,

now in the office of the said Isaac Sylvester, and on a part of which Marder, Luse & Co. have a chattel mortgage, for the term of twenty-seven months from and after the time when said machinery shall be set up and in running order on the fourth floor of No. 1118 Howard street, Omaha. The said party of the second part hereby agrees to pay to Marder, Luse & Co. at Omaha, Nebraska, the sum of $25 per month for the use of said machinery and material, first payment to be made when machinery is set up as above provided, and monthly thereafter. They also agree to furnish, without charge, teams, wagons, and drivers for the removal of the above described property." January 22, 1892, Sylvester and the Carpenter Paper Company entered into an agreement in writing as follows: "The said Isaac Sylvester, for and in consideration of one dollar ($1) in hand paid, and the covenants and agreements of the Carpenter Paper Company hereinafter mentioned, hereby agrees to enter the employment of said party of the second part, and work under its direction, in connection with a printing and ruling department which they propose to add to their business, and to give the same his undivided and faithful attention during the term of twenty-seven months, if so desired by the said party of the second part. The said Carpenter Paper Company agrees to pay the said Isaac Sylvester for said services during such term as his work shall be satisfactory the sum of one hundred dollars ($100) per month, forty dollars of the same being paid direct to himself, ten dollars to be applied to his indebtedness to the said party of the second part until settled, and the remainder of fifty dollars per month to be paid to Marder, Luse & Co. until their past due claim is settled, and party of the second part hereby reserves the right to cancel this agreement at any time when the services of the first party are not satisfactory. It is mutually agreed that the above is to take effect as soon as the printing office of the said party of the first part is transferred to the fourth floor of 1118 Howard street, of

this city, and is set up ready for business." About February 1, 1892, the printing material leased to the Carpenter Paper Company was, by virtue of the writing bearing date January 16, 1892, transferred to its possession, and so remained until taken from them by the writ of replevin issued in this action. About the time the Carpenter Paper Company came into possession of the printing material under its lease Sylvester began work for it and so continued for a few months, when he was discharged or quit. March 5, 1894, Sylvester brought this action in replevin against the Carpenter Paper Company and Marder, Luse & Co. to recover the printing outfit delivered to the Carpenter Paper Company in pursuance of the contract of January 16, 1892. The action was brought, however, within less than twenty-seven months after January 16, 1892. The jury, in obedience to an instruction of the district court, returned a verdict in favor of the parties made defendants, upon which a judgment was entered against Sylvester, to review which he has filed here a petition in error.

1. The evidence shows without conflict that about February 1, 1892, the Carpenter Paper Company, in pursuance of the writing of January 16, 1892, took possession of the printing outfit and remained in possession thereof until this suit was brought, during all of which time it made the monthly payments promised to Marder, Luse & Co. There is no evidence in the record that at the time this suit was brought the debt of Sylvester to Marder, Luse & Co. had been discharged; nor is there any evidence in the record which shows, or tends to show, that Sylvester, at the time this suit was brought, was entitled to the possession of the property in controversy here if the writings of January 16 and 22 constitute the contracts between the parties.

2. On the trial of the case Sylvester offered to prove that in the early part of January, 1892, and prior to the making of these writings, the paper company proposed to him to employ him, together with his printing outfit,

for twenty-seven months at $125 per month, which proposition he accepted; that as a matter of fact there never existed two contracts between himself and the paper company—one contract with reference to leasing the printing outfit, and a separate contract for his personal services; and that the writings of January 16 and 22 were mere memoranda entered into by the parties for the purpose of evidencing the consent of Marder, Luse & Co., the mortgagees of the printing outfit, to the possession thereof by the paper company; and that the agreement of all three of the parties was that when the printing outfit should come into possession of the paper company, one contract should be drawn to the effect that the paper company should have the right to the possession and use of the printing outfit for twenty-seven months and the personal services of Sylvester for the same length of time; that the paper company should pay for such personal services and for the use of the printing outfit $125 per month, part of which sum should be applied monthly to the discharge of Sylvester's debt to the paper company, part to the discharge of his debt to Marder, Luse & Co. and the remainder of the monthly payment should go to Sylvester, and that the agreement should contain a provision that either party to the contract might terminate it at his pleasure.

The exclusion by the court of this offer of proof is the principal argument relied upon here for a reversal of the judgment under review. We do not think the court erred in excluding the offer. There is no claim made by Sylvester in this case, by pleading or otherwise, that the contracts of January 16 and 22, or either of them, are the result of fraud or mistake upon the part of any one. His contention is that one contract existed between himself and Marder, Luse & Co. on the one side, and the Carpenter Paper Company upon the other, by the terms of which it employed him for a given time at a given salary, he to furnish tools and appliances—namely, the printing outfit—with which to do the work for which he was em-

ployed. But the agreements of the parties as evidenced by what they have reduced to writing were two in number. One of these agreements was a lease by Sylvester of his printing outfit to the Carpenter Paper Company for a given time, the mortgagee of the printing outfit consenting thereto in consideration that the lessee should make to it certain payments monthly. The other writing evidenced an agreement between the paper company and Sylvester, to which Marder, Luse & Co. were not parties, and this latter agreement had reference solely to personal services which Sylvester agreed to render for the Carpenter Paper Company. The writings which evidence the contract between the parties are not ambiguous, and, as already stated, it is not pretended that they were procured by fraud or are the result of a mistake in any respect whatever. To have permitted the offered evidence to go to the jury would have been to permit Sylvester to vary and contradict his plain written contract by parol testimony. He claims that the negotiations which were the subject-matter of the contract between the parties occurred early in January, 1892, and that a certain agreement was then reached; and we find that subsequent to that date the parties solemnly put into writing their agreements; and as these writings were made without fraud and without mistake we think they are not only the best evidence, but the only competent evidence, as to what the actual contract of the parties was. (*Mills v. Miller*, 4 Neb. 441; *Hamilton v. Thrall*, 7 Neb. 210; *Dodge v. Kiene*, 28 Neb. 216; *Watson v. Roode*, 30 Neb. 264; *Frey v. Drahos*, 6 Neb. 1; *Webster v. Wray*, 19 Neb. 558; *Clarke v. Kelsey*, 41 Neb. 766; *Maxwell v. Burr*, 44 Neb. 31; *Kaserman v. Fries*, 33 Neb. 427; *Mattison v. Chicago, R. I. & P. R. Co.*, 42 Neb. 545; *Commercial State Bank v. Antelope County*, 48 Neb. 496; *Waddle v. Owen*, 43 Neb. 489; *Miller v. Gunderson*, 48 Neb. 715; *Van Etten v. Howell*, 40 Neb. 850; *Gerner v. Church*, 43 Neb. 690; *Morse v. Rice*, 36 Neb. 212; *Nebraska Exposition Ass'n v. Townley*, 46 Neb. 893; *Western Mfg. Co. v. Rogers*,

44

54 Neb. 456.) But this record shows without controversy that the Carpenter Paper Company, Marder, Luse & Co., and Sylvester, for nearly twenty-seven months after the writings of January 16 and 22, 1892, acted upon and carried out the terms of those writings, both in letter and spirit; in other words, that the conduct of the parties themselves since January, 1892, shows unmistakably that the writings evidenced the actual contract which existed between them. For nearly twenty-seven months the Carpenter Paper Company was carrying out these agreements as embraced in the writing of January 16, 1892, was paying $25 per month to Marder, Luse & Co. to discharge Sylvester's debt, and during all this time Sylvester makes no complaint or claim that the paper company is not rightfully in possession of the printing outfit and in possession thereof in pursuance of the contract of January 16, 1892, and it is at least doubtful, if no other objections were in the way, if Sylvester is in any position to now claim that the writings of January 16 and 22, 1892, do not constitute the actual contract between himself, the paper company, and Marder, Luse & Co.

Counsel for plaintiff in error, in support of his contention that the district court erred in refusing to receive the testimony offered, cite us to *Norman v. Waite*, 30 Neb. 302, and to *Barnett v. Pratt*, 37 Neb. 349. Neither of these cases is an authority for the contention urged here. The *Norman Case* was a suit upon a promissory note in the hands of one not an innocent purchaser thereof, and the defense was that the note had been procured from the maker by a false and fraudulent representation, and that there was, therefore, no consideration for the note. In the *Pratt Case* no oral evidence was offered or received to contradict or vary a written agreement, as the writing in that case was a mere receipt for money. The judgment of the district court is

AFFIRMED.